IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MATTHEW LOWE,

        Plaintiff,

    v.                                         Civ. No. 23-160 MIS/JFR

BERNALILLO COUNTY BOARD
OF COMMISSIONERS, and CITY
OF ALBUQUERQUE,

        Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on two motions.  First, Defendant Bernalillo County Board of Commissioners' ("BCBC") *Motion for Summary Judgment on the Martinez Report*, filed February 20, 2025.  Doc. 43.  Second, Defendant City of Albuquerque's *Motion for Summary Judgment*, filed jointly with its *Martinez* Report on February 21, 2025.  Doc. 46.  The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, concludes that Defendants' motions for summary judgment (Docs. 43, 46) are well taken, and recommends that both be **GRANTED**.

## I. PROCEDURAL BACKGROUND

Plaintiff Matthew Lowe, a pro se prisoner, filed his initial complaint on February 23, 2023.  Doc. 1.  Pursuant to the Court's Order to Cure Deficiencies (Doc. 2), Plaintiff filed his First Amended Complaint on March 27, 2023.  Doc. 3.  On March 8, 2024, the Court dismissed Plaintiff's First Amended Complaint without prejudice for failing to "connect any specific

---

[1] By an Order of Reference filed January 23, 2025, the Honorable Margaret I. Strickland referred this matter to the undersigned to conduct hearings as warranted, including evidentiary hearings, and to perform any legal analysis required to recommend an ultimate disposition of the case.  Doc. 38.

Defendant [of the ten listed] to the alleged wrongdoing." Doc. 16 at 3. Therein, the Court explained that despite the Court's liberal construction of pro se pleadings, Plaintiff's Complaint must nonetheless state a valid claim. *Id.* (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Notably, the Court then provided Plaintiff the applicable legal requirements for 42 U.S.C. § 1983 claims against local-government entities, Fourteenth Amendment claims of deliberate indifference to health and/or safety, and First Amendment claims for hindering legal access. *Id.* at 3-6.

As the Court permitted in its Order Dismissing Complaint Without Prejudice (Doc. 16 at 4, 6), Plaintiff filed a Second Amended Complaint on July 19, 2024. Doc. 22. However, without leave of the Court, Plaintiff filed a Third Amended Complaint on August 2, 2024. Doc. 23. Shortly thereafter, on August 7, 2024, Plaintiff filed a *Motion to File a Fourth Amended Prisoner Civil Rights Complaint*. Doc. 24. Before the Court could rule on this motion, Plaintiff filed his proposed Fourth Amended Complaint (Doc. 25) on August 16, 2024, followed by a *Motion to Strike* (Doc. 26) his Second and Third Amended Complaints on August 19, 2024.

On November 25, 2024, the Honorable Margaret I. Strickland entered an Order Directing Answer and *Martinez* Report, which first granted Plaintiff's motions to file a Fourth Amended Complaint and to strike his Second and Third Amended Complaints, thereby making Plaintiff's Fourth Amended Complaint (hereafter, "Complaint") the operative complaint. Doc. 27 at 1. The Court then conducted an initial review of Plaintiff's Complaint and found that:

> [t]he Fourth Amended Complaint alleges Plaintiff experienced multiple lockdowns at his prior facility (the Metropolitan Detention Center, or "MDC") that lasted over 72 hours. It further alleges that MDC's facilities were covered in human waste and that he was sometimes left to sit in his own feces. These facts warrant a response under 28 U.S.C. § 1915(e).

*Id.* at 1 (internal citations omitted).  Accordingly, the Court ordered Defendants to answer Plaintiff's Complaint and file *Martinez* Reports that "address the allegations against Defendant[s]," including a "a written brief that discusses Plaintiff's claims."  *Id.* at 3.

Defendants both filed Answers on January 23, 2025.  Docs. 36-37.  On February 20, 2025, Defendant BCBC filed its *Martinez* Report and Memorandum in Support for Summary Judgment, responding only to the issues that the Court identified in its Order Directing Answer and *Martinez* Report.  Doc. 42 at 1 (citing Doc. 27 at 1 (finding that Plaintiff's allegations of excessive lockdowns and unsanitary living conditions warranted a response under 28 U.S.C. § 1915(e))).  That same day, Defendant BCBC also filed its *Motion for Summary Judgment on the Martinez Report*.  Doc. 43.  On February 21, 2025, Defendant City of Albuquerque filed a combined *Martinez* Report and *Motion for Summary Judgment*.  Doc. 46.  Plaintiff jointly responded to both Defendants' *Martinez* Reports in a single filing on March 5, 2025.  Doc. 47. On March 25, 2025, Defendants both filed Replies.  Docs. 49-50.[2]

## II.  RELEVANT FACTUAL BACKGROUND

Plaintiff is an inmate currently incarcerated at the Southern New Mexico Correctional Facility.  Doc. 39.  At all times relevant to the Complaint–from August 25, 2021, through February 1, 2023–Plaintiff was a pretrial detainee at the Bernalillo County Metropolitan Detention Center ("MDC") in Albuquerque, New Mexico.  Docs. 25 at 17, 42-1 at 1 ¶ 9. Plaintiff alleges that during these eighteen months at MDC, he was subjected to excessively long lockdowns, unsanitary living conditions, inadequate medical and mental health treatment, and inadequate handling of the administrative grievance process.  *See generally* Doc. 25 at 17-33.

---

[2] Plaintiff filed a Surresponse without leave of the Court on April 14, 2025.  Doc. 52.  Defendants filed a *Joint Motion to Strike Plaintiff's "Reply to Defendants Reply"* (Doc. 53), on April 28, 2025, which the Court granted on May 16, 2025.  Doc. 54.  Accordingly, the Court will not consider Plaintiff's stricken Surresponse for any analysis herein.

A. **Detoxification in General Housing Unit F**

Upon his arrival at MDC, Plaintiff was housed in the detoxification unit for six days, from August 25, 2021, through August 31, 2021.  Doc. 25 at 19-20, 27; *see also* Doc. 36 at 3 ¶ 11.  The so-called detoxification "unit" was, in fact, Unit F's day room, where Plaintiff and approximately twenty other inmates slept on "boats."[3]  *See* Docs. 25 at 19-20, 27, 36 at 3 ¶ 11.  These inmates shared one open cell for a bathroom, which was allegedly covered in human excreta and frequently occupied.  Doc. 25 at 19-20, 27.  Each day during Plaintiff's detoxification, he received a total of thirty minutes (divided into two fifteen-minute intervals) off his boat.  *Id.* at 19.  Additionally, Plaintiff only received two showers, one of which was after he vomited so intensely he defecated in his pants.  *Id.* at 20, 27.  Further, someone stole Plaintiff's towel and pair of socks, leaving him cold and unable to dry off.  *Id.* at 20.  Plaintiff was denied replacements or an extra blanket.  *Id.*

On September 1, 2021, Plaintiff was moved to a "cell in the same pod," for approximately one week, during which he received one shower and zero time out of his cell.[4]  *Id.*  On or about September 9, 2021, Plaintiff was moved to Unit E, Pod 6.  *Id.*

---

[3] Although Plaintiff does not describe what a "boat" is, courts have explained that the term often refers to open-topped plastic shells used as temporary makeshift beds.  *See Carrillo v. Torres*, No. 08-0069, 2009 WL 10708083, at *6 n.5 (D.N.M. Mar. 20, 2009) (describing "boats" as "plastic, stackable bed frames"); *Xirum v. U.S. Immigr. & Custom Enf't*, No. 22-cv-00801, 2023 WL 2683112, at *6 n.3 (S.D. Ind. Mar. 29, 2023) ("'Boat beds' are thin, plastic tub-shaped pallets placed on the floor and intended for use as temporary sleeping arrangements.").

[4] From the Court's understanding, as construed from the usage of the terms "unit(s)" and "pod(s)" throughout Plaintiff's pleadings and Defendants' *Martinez* Reports, each housing unit is further divided into pods, each referring to an assigned group of cell numbers.  *See, e.g.*, *compare* Doc. 42-1 at 41 (grievance filed while Plaintiff lived in Unit E, Pod 6), *with id.* at 42 (grievance filed while Plaintiff lived in Unit E, Pod 7); *see also* Doc. 42-1 at 31 (listing two sets of consecutive cell numbers, each referring to one of two pods which received a half hour out of their cells).

4

**B.  General Housing Unit E, Pod 6**

Plaintiff was moved to Unit E, Pod 6 on or about September 9, 2021.[5]  From that time

forward, Plaintiff filed a total of seventy-eight grievances, Doc. 42-1 at 2 ¶ 5, many of which

Plaintiff alleges went unanswered or were answered post-release.  *See* Doc. 25 at 4, 14, 18, 29;

*see also* Doc. 47 at 3.  Defendant BCBC only included the six grievances pertaining to time-out-

of-cell (Doc. 42-1 at 13, 41-46) in its *Martinez* Report, but noted that the others regarded:

> requesting methadone treatment, requesting to work, refunds, education questions,
> issues making phone calls, re-classification requests, requesting blood work,
> information on his charges, cardiac diet, insufficient a.m. timeouts, derogatory
> comments about race and religion, transferring funds, account balance inquiries,
> questions on tablets and chargers being issued, shortage on pay, complaints about
> the movies being played, mail out, and issues with commissary orders.

Doc. 42-1 at 2 ¶ 5.

Relatedly, from September 9, 2021, through mid-November of 2021, Plaintiff repeatedly

attempted "to be seen by medical for blood work and to address [unspecified] health concerns,"

but his requests went unfulfilled until he was visited and assisted by attorney Katherine Loewe.

Doc. 25 at 21; *see also id.* at 27-28.  After Ms. Loewe visited Plaintiff, she allegedly talked to

someone, and later that same day, Plaintiff was evaluated by a rude medical provider who

diagnosed Plaintiff with Peripheral Artery Disease ("PAD") and prescribed him high blood

pressure medication.  *Id.* at 21; *but see id.* at 28 (potentially suggesting three-month delay

between the time of diagnosis and receiving medication, but more plausibly describing the three-

month period from the start of his detention to when he was diagnosed and medicated, during

most of which he was trying to get bloodwork and see a provider).

---

[5] Defendant BCBC's Answer states the date as "September 6, 2021."  Doc. 36 at 4 ¶ 17.  The Court assumes that this was merely a typographical error since Defendant BCBC was admitting to the paragraph of Plaintiff's pleading listing "September 9th," Doc. 25 at 20.  Regardless, this discrepancy has no material impact on the outcome of this case.

At an unspecified date a few days after his PAD diagnosis, Plaintiff was seen by a nurse from the Psychiatric Services Unit ("PSU"), whom he informed of his Post-Traumatic Stress Disorder ("PTSD"), depression, anxiety, and Opioid Use Disorder ("OUD," which is a subtype of Substance Use Disorder ("SUD")).  *Id.* at 21, 28.  The nurse denied Plaintiff medication and accused him of attempting "to get 'psych' meds for what ammounts [sic] to street use."  *Id.* at 21; *see also id.* at 28.  In fact, even after Plaintiff "proved to the nurses" that he qualified for MAT, he was still denied methadone (a medication used for treating OUD) and eventually relapsed, contracting Hepatitis C.  *Id.* at 29-30.

### C. <u>Restrictive Housing Unit</u>

Around the first week of December 2021, Plaintiff filed a grievance against Officer Shane Flynn for denying inmates the required time out of their cells, consequently denying access to showers and telephones, and making derogatory remarks.[6]  *Id.* at 22, 28.; *see also id.* at 25.  Shortly thereafter, Plaintiff was placed in a Restricted Housing Unit ("RHU"), from December 7, 2021, until December 14, 2021.  Docs. 25 at 22, 42-1 at 2 ¶ 4.  Despite Plaintiff's contentions otherwise, Doc. 25 at 22, 28, Defendant BCBC asserts that was a non-retaliatory RHU placement, made pursuant to MDC policy, as an investigation into allegations that Plaintiff possessed gang paraphernalia was pending.  Doc. 42-1 at 2 ¶ 4.  Outside of this one week, Plaintiff was housed in a general population unit for the entirety of his incarceration at MDC. *Id.*; *see also* Doc. 25 at 22, 28.

### D. <u>Subsequent General Housing Unit Placements</u>

On or about December 15, 2021, following his RHU placement, Plaintiff was moved into Unit E, Pod 8.  Doc. 25 at 22, 28.  At an unspecified date thereafter, Plaintiff was moved to Unit

---

[6] The Court notes that the only grievances against Officer Flynn provided in Defendant BCBC's *Martinez* Report are dated October 21, 2021, and November 5, 2021.  Doc. 42-1 at 13, 41.

D, Pod 8.[7]  *Id.* at 28.  In February 2022, Plaintiff was moved to Unit E, Pod 7, where he remained

until February 1, 2023, when his detention at MDC concluded.[8]  *See id.* at 17, 29.

Per MDC policy, general population inmates are out of their cells for a total of ten hours

every day (between 8:00 a.m. through 2:00 p.m. and 4:00 p.m. through 8:00 p.m.), as conditions

permit.  *See* Doc. 42-1 at 4 ¶¶15-16, 64.  However, during this last year at MDC, Plaintiff alleges

that inmates often experienced multi-day lockdowns, during which they received zero hours out

of their cells for 72 hours, with approximately ten lockdowns lasting between 84 and 120 hours,

as well as multiple other instances when inmates' daily time out of cell was significantly

reduced.[9]  Doc. 25 at 7, 13-14, 22-23, 29.

Defendant BCBC admits that these lockdowns occurred, but explained that it has no

means of accounting for when every lockdown occurred or how long each lasted.  Docs. 42 at 1,

3, 42-1 at 2, 4 ¶¶ 3, 15-16; *see also* Doc. 42-1 at 2-11 ¶¶ 8-14, 17-19, 27-33.  However, as

Plaintiff recognizes, *see* Doc. 47 at 1, these lockdowns were not exclusive to him; the lockdowns

either impacted the whole detention facility or Plaintiff's housing unit or pod in response to

---

[7] Plaintiff states that during this time he "was still trying to get propper [sic] medical treatment and information about my P.A.D[.] which [he] never got," despite having previously stated that he was placed on high blood pressure medication.  *Compare* Doc. 25 at 28-29, *with id.* at 21.

[8] Plaintiff alleges that he was placed in Unit E, Pod 8.  Doc. 25 at 29.  However, the record clearly shows that during this time, he was housed in Unit E, Pod 7.  *See, e.g.*, Doc. 42-1 at 42-46 (four grievances from December 2022 and January 2023, all filed from Unit E, Pod 7).  However, this detail does not impact the Court's analysis.

[9] The Court recognizes that Plaintiff's claim also makes similar allegations about other times of his detention at MDC. *See, e.g.*, *supra* Section II.A (discussing the lack of time off his boat during detoxification and lack time out of cell between September 1, 2021, and September 9, 2021); Doc. 25 at 20 (same); *id.* (alleging that twice per week, he received fifteen to thirty minutes out of his cell from September 9, 2021, through December 7, 2021); *id.* at 22, 28 (alleging he was locked down for over one hundred hours during his week in the RHU in December 2021); *id.* at 22 (alleging that even after he was moved out of the RHU to Unit E, Pod 8, he was "still being locked down for excessive ammounts [sic] of time in a small cell."); *id.* at 25 (broadly alleging that were "constant excessive lockdowns . . . ."). However, Plaintiff focuses on and mainly discusses the year from February 2022 through February 2023.  Doc. 25 at 22-23, 29.  Regardless, the Court's analysis on the constitutionality of these lockdowns remains the same and its reasoning is broadly applicable.

conditions–often staffing shortages–that jeopardized the jail's safety and security.  Docs. 42 at 1-2, 42-1 at 4 ¶¶ 15-16.

As a result of these lockdowns, Plaintiff often lacked access to MDC's shared amenities and activities, including showers, telephones, jail kiosks, the legal library, religious services, cleaning supplies, interaction with other inmates (including shared meal settings), exercise, and the housing unit's day room.  Doc. 25 at 7, 22-23, 25-26, 29, 32; *see also* Doc. 47 at 3 (explaining that even though inmates received time out of their cells, "most of the time[,] it wasnt [sic] even enough time to shower let alone exercise.").  Plaintiff further alleges that the lockdowns led to generally unsanitary housing conditions.  *See* Doc. 25 at 22-23, 25. Specifically, "[t]rash would pile up in the cells with rotting food [and Plaintiff had] no access to showers [or] cleaning supplies for 3-4 days at a time."  *Id.* at 23; *see also* Doc. 47 at 2 ("[O]fficcers [sic] [did] 'trash runs' every 2-4 days.").

Once, Plaintiff was allegedly locked down in his cell with a broken toilet for four consecutive unspecified days in November of 2022, forcing him to live in close proximity to his feces.  Doc. 25 at 23, 29.  On the first day, Plaintiff informed Lieutenant Speedy, the acting Unit E Supervisor, who allegedly informed Plaintiff that "he was short staffed but he would try to get it fixed."  *Id.* at 23; *see also* Doc. 47 at 5 (Plaintiff's unsupported conclusory statement that he "know[s] Lt. Speedy was working and put in a work order.").  For the next four days, Plaintiff "told every officer that came to check in on [the inmates] every few hours."  Doc. 47 at 2.

Only on the fourth day did Plaintiff allegedly file a grievance about the broken toilet, which he admits did not include all pertinent details due to his embarrassment.  *See* Doc. 47 at 2 ("I filed a grievance stating that I was locked down in my cell for four days with a broken toilet. At first I was embarassed [sic] to admit that I had to deficate [sic] in bags and urinate in my sink,

but when I filed this suit I decided to include more details."). However, Defendant BCBC claims that it has no record of any requests, grievances, complaints, or incidents about unsanitary conditions, including living in or near feces. Doc. 42-1 at 7 ¶ 20. Likewise, Defendant BCBC has no record of a broken toilet in Plaintiff's cell in November 2022. *Id.* at 8 ¶ 26. There is, however, a record of an overflowing toilet in a different cell in the same unit on November 16, 2022, which maintenance addressed that same day. *Id.*; *see also id.* at 68.

Lastly, on January 12, 2023, Plaintiff filed two grievances. *Id.* at 44-46. The first sought "to be seen by PSU" because he felt his "mental health deteriorating from being locked down all the time . . . ." *Id.* at 44. The second requested an optometry appointment because he could not see the television from his cell. *Id.* at 46. Both grievances were not answered until August 10, 2023, six months after Plaintiff was released from MDC. *Id.* at 44-46.

On January 25, 2023, the Second Judicial District Court for Bernalillo County entered its Judgment, Sentence, and Partially Suspended Sentence, ordering that in light of Plaintiff having been convicted of Homicide by Vehicle (DWI) on October 21, 2022, he serve the remainder of his sentence in the custody of the New Mexico Department of Corrections ("NMCD"). *See* Doc. 46-2 at 1-3, 5. Accordingly, Plaintiff was transferred out of MDC and into NMCD's custody on February 1, 2023. *See id.* at 3, 5; Doc. 42-1 at 1 ¶ 2.

### III. LEGAL STANDARDS

#### A. Dismissal

Fed. R. Civ. P. 12(b)(6) provides that a party may assert, by motion, the defense of failure to state a claim upon which relief can be granted. *See also* Fed. R. Civ. P. (8)(a), (d) (listing the prerequisites for a pleading to state a claim for relief). In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views

them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte 'when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Hall*, 935 F.2d at 1109 (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).

While the facts in the complaint need not be detailed, they must be sufficient to allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Furthermore, pleadings offering "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, internal quotation marks, and citation omitted). Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted). Consequently, a motion to dismiss gives plaintiff notice and opportunity to amend his complaint. *Hall*, 935 F.2d at 1110.

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the

complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (internal quotation marks and citation omitted).

## B. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *see also Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "Instead, the movant only bears the initial burden of 'showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325) (quotation within quotation marks omitted).

Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c). Rule 56(c) requires "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c); *see also* D.N.M. LR-Civ 56.1(b). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002); *see also Applied Genetics Int'l v. First Affiliated Secs.*, 912 F.2d 1238, 1241 (10th Cir. 1990). Likewise, "only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief." *West v. Norton*, 376 F. Supp. 2d 1105, 1118 (D.N.M. 2004) (citing *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997) (citing *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir. 1986)). The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). If there is no genuine issue of material fact in dispute, then a court must determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

### C. **Plaintiff's Pro Se Status and Use of the *Martinez* Report**

In addition to the standards applicable to all motions for summary judgment or to dismiss, the Court notes that Plaintiff's pleadings and responses were prepared without the assistance of counsel. It has long been the rule that pro se pleadings are construed with a greater degree of liberality than those of a trained attorney. *See Hall*, 935 F.2d at 1110, 1110 n.3; *Hill v. Corrections Corp. of Am.*, 14 F. Supp. 2d 1235, 1237-38 (D. Kan. 1998). This rule requires the Court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. *See Hall*, 935 F.2d at 1110. However, it is inappropriate for a court to assume the role of an advocate and read into a complaint facts or legal theories that are simply not present there. *See id.* at 1109-10; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."). Additionally, the fact that Plaintiff is proceeding pro se does not excuse his noncompliance with every litigant's duty to comply with the fundamental rules of procedure. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

A plaintiff's pro se status, in and of itself, does not prevent a court from granting summary judgment. *See, e.g.*, *Baughman v. Saffle*, No. 00-6296, 2001 WL 1241329, at *1, *3

(10th Cir. Oct. 27, 2001); *Woods v. Roberts*, No. 94-3159, 1995 WL 65457, at *2-3 (10th Cir. Feb.

17, 1995).  Moreover, "[d]ismissal of a pro se complaint for failure to state a claim is proper only

where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be

futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007)

(quoting *Curley v. Perry*, 246 F.3d 1278, 1281 (10th Cir. 2001)).  The burden is on the Plaintiff to

frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The Court cannot assume facts or make connections on Plaintiff's behalf because "a pro se

plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and

he must provide such facts if the court is to determine whether he makes out a claim on which

relief can be granted."  *Hall*, 935 F.2d at 1110.

"When the pro se plaintiff is a prisoner, a court-authorized investigation and report by

prison officials (referred to as a *Martinez* report) is not only proper, but may be necessary to

develop a record sufficient to ascertain whether there are any factual or legal bases for the

prisoner's claims." *Id.* at 1109 (first citing *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir.

1978); then citing *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987)).  Likewise, because pro se

litigants may be unfamiliar with the requirements to sustain a cause of action, they should be

provided an opportunity to controvert the facts set out in the *Martinez* report.  *Id.*

## IV. <u>ANALYSIS</u>

Plaintiff alleges that, pursuant to 42 U.S.C. § 1983, Defendants BCBC and the City of

Albuquerque, by failing to resolve the staffing shortages at MDC, violated the First, Fifth,

Eighth, and Fourteenth Amendments of the U.S. Constitution.[10]  Doc. 25 at 2, 13, 18, 24, 33.  In turn, Plaintiff seeks five million dollars in compensatory damages, an unspecified amount of punitive damages, and "attorney fees due to [him] being a pro see [sic] plantiff [sic] and indigent."  *Id.* at 7, 32-33.

### A.  Defendant City of Albuquerque's *Motion for Summary Judgment*

The Court will first address why the City of Albuquerque is not a proper defendant in this case.  Plaintiff alleges that the Defendant City of Albuquerque was "hired by the State of New Mexico to oversee and maintain M.D.C." and that it was "responsable [sic] for operating and maintaining M.D.C. under STATE LAW."  Doc. 25 at 1-2 (capitalization in original).  But the record and case law clearly show that the City of Albuquerque does not operate or staff MDC.

First, as demonstrated in both Defendants' Answers, Docs. 36 at 1-2, 37 at 10, as well as the affidavit of William J. Duran, the Deputy Director of the General Services Department at the City of Albuquerque, Doc. 46-3 at 2 ¶¶ 5-7, Defendant BCBC operates and maintains MDC–*not* the City of Albuquerque.  When given the opportunity to rebut this undisputed material fact, Plaintiff only offered unsupported conclusory allegations.  Doc. 47 at 1 ("I don't see how the City of Albuquerque isn't responsible for the jail that is used for the City of Albuquerque. Especially when the City was made aware of the staffing issues that were violating my rights as a pre-trial detainee."); *but see* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[10] Plaintiff's Complaint mentions "state law" three times without further specification or explanation.  Doc. 25 at 2, 3, 31.  The Court will not act as Plaintiff's advocate and raise claims that are simply not present.  *Hall*, 935 F.2d at 1109-10; *Drake*, 927 F.2d at 1159.  Accordingly, the analysis herein is strictly limited to federal law.

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .").

Second, as other judges in this court have repeatedly recognized, MDC is a *county* jail, not a city jail. *See, e.g.*, *Robinson v. Bd. of Cnty. Comm'rs of Bernalillo*, No. 23-cv-73, 2024 WL 218468, at *2 (D.N.M. Jan. 19, 2024) ("[I]t was not clear what Plaintiff's claims might be against City of Albuquerque because the Complaint contained no factual allegations to that effect, and MDC is a county jail."); *Crespin v. City of Albuquerque*, No. 22-CV-811, 2023 WL 5237444, at *2 (D.N.M. Aug. 15, 2023) ("It is possible that Plaintiff's municipal liability claims are aimed at the Bernalillo County Board of Commissioners, which is the municipal entity responsible for MDC."); *Encinias v. Torres*, No. CV 08-731, 2009 WL 10706923, at *2 (D.N.M. Oct. 29, 2009) ("The City of Albuquerque . . . continued to operate the MDC until June 30, 2006. The County of Bernalillo assumed the sole responsibility for operating MDC on July 1, 2006.").

In conclusion, Defendant BCBC is the proper defendant for claims against MDC. *Accord Robinson*, 2024 WL 218468, at *2; *Encinias*, 2009 WL 10706923, at *2. Because there is no genuine dispute of the material fact that Defendant City of Albuquerque is not responsible for the staffing, maintenance, or operation of MDC, it is entitled to summary judgment on all claims. *Accord* Fed. R. Civ. P. 56(a).

**B. Defendant BCBC's *Motion for Summary Judgment***

Because Plaintiff's claims are inapplicable to the Defendant City of Albuquerque, the Court analyzes his claims solely against Defendant BCBC. *See supra* Section IV.A. To succeed on each of his claims, Plaintiff must fulfill both the requirements of the alleged underlying constitutional violation, and the requirements of establishing municipal liability. *See Milligan-*

*Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008);

*Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Section 1983 is the "remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trs.*, 215 F.3d 1168, 1172 (10th Cir. 2000). It is undisputed that MDC, as an entity, constitutes a "person" acting under the color of state law for purposes of Section 1983. *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also* Doc. 42 at 14.

However, Section 1983 "rejects the tort principle of *respondeat superior* and does not subject municipalities to vicarious liability for the acts of their employees." *Milligan-Hitt*, 523 F.3d at 1223 (citing *Monell*, 436 U.S. at 690-95). Instead, entity-defendants, including municipalities, can only be liable for acts it officially promulgates or the actions of an official with final policymaking authority. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). An official policy or custom may include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citing *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

A plaintiff must also plausibly allege that the policy or custom was enacted or maintained with deliberate indifference to a known or obvious consequence, and "that, through its deliberate

conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty.*

*Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 397 (1997). "'[D]eliberate indifference' is a

stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

consequence of his action," *id.* at 410, which "may be satisfied when the municipality has actual

or constructive notice that its action or failure to act is substantially certain to result in a

constitutional violation . . . ." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "In

most instances, notice can be established by proving the existence of a pattern of tortious

conduct." *Id.* But in a "narrow range of circumstances," deliberate indifference "may be found

absent a pattern of unconstitutional behavior" where "a violation of federal rights is a 'highly

predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at

1307-08 (quoting *Brown*, 520 U.S. at 398, 409).

In sum, a successful section 1983 claim against a municipality requires a plaintiff to

prove: (1) that a municipal employee committed the underlying constitutional violation, (2) an

official policy or custom, (3) proximate causation, and (4) deliberate indifference. *See Milligan-*

*Hitt*, 523 F.3d at 1223 (citing *Monell*, 436 U.S. at 694); *Lucas*, 58 F.4th at 1145.

However, prisoners' rights are inherently limited by the fact of incarceration, and may be

further curtailed in order to achieve legitimate penological interests. *Turner v. Safley*, 482 U.S.

78, 89 (1987); *see also Washington v. Harper*, 494 U.S. 210, 223 (1990); *Shaw v. Murphy*, 532

U.S. 223, 225 (2001). Thus, once a plaintiff fulfills all legal requirements of his claim(s),

defendants may rebut by identifying "legitimate penological interests that justified the

[reasonably related] impinging conduct . . . ." *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th

Cir. 2016); *see also O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987) ("To ensure that courts

afford appropriate deference to prison officials, we have determined that prison regulations

alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive

than that ordinarily applied . . . .").  Moreover, the Court is mindful of the Supreme Court's

mandate that the judicial branch accord deference to facility authorities in the running of prisons

and jails.  *Turner*, 482 U.S. at 85.

### 1.  Plaintiff's Abandoned Claims Must be Dismissed.

Before turning to Plaintiff's more substantive claims, the Court recognizes that Plaintiff's

Complaint alleges Defendants limited legal access and served expired food (which would be

analyzed under the First and Fourteenth Amendments, respectively).  Doc. 25 at 2, 7, 13-14.

However, with one exception, *id.* at 2 (listing "hindering legal access"), these allegations only

appear in certain pages of the "Complaint for Violation of Civil Rights (Prisoner)" packet that

Plaintiff reused from earlier amended complaints.  *See id.* at 7-16 (Court's standard heading

reprinted over the headings printed from when these pages were previously filed).  Similarly,

Plaintiff has not subsequently raised or addressed these claims.  *See, e.g.*, *id.* at 17-33; Doc. 47.

The Court construes Plaintiff's failure to elaborate on these claims in the additional and original

pages attached to his Fourth Amended Complaint (Doc. 25 at 17-33) or in his Response (Doc.

47) to the *Martinez* Reports as an abandonment of those issues.  Even if Plaintiff intended to

pursue them, the claims cannot survive without further factual development or legal support, as

the Court previously advised.  Doc. 16 at 3-6.  Accordingly, Plaintiff's claims concerning expired

food and legal access must be dismissed with prejudice under Rule 12(b)(6).

### 2.  Plaintiff's Fifth Amendment Claim Must be Dismissed.

Plaintiff twice alleges violations of the Fifth Amendment with no further elaboration.

Doc. 25 at 2, 33.  Given the nature of this case, it appears that Plaintiff is citing the Fifth

Amendment's Due Process Clause, which forbids the federal government from depriving any

person "of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Comparatively, the Fourteenth Amendment governs states' actions. U.S. Const. amend. XIV.

Because there is no indication of any action against a federal entity or actor here, the Fifth

Amendment is inapplicable. Plaintiff's Fifth Amendment claim, therefore, must be dismissed

with prejudice under Rule 12(b)(6).

### 3.  Plaintiff's Eighth Amendment Claim Must be Dismissed.

Plaintiff also alleges violations of the Eighth Amendment, which, in brief, prohibits cruel

and unusual punishment. U.S. Const. amend. VIII. But because Plaintiff was a pretrial detainee

at all times relevant to the Complaint, the Eighth Amendment is inapplicable to his claim. *See*

*Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010) (stating that the Eighth Amendment

applies to "prisoners already convicted of a crime . . . ."). Thus, Plaintiff's Eighth Amendment

claim must be dismissed under Rule 12(b)(6).

However, pretrial detainees are protected under the Fourteenth Amendment's Due

Process Clause. U.S. Const. amend. XIV; *see Burke v. Regaldo*, 935 F.3d 960, 991 (10th Cir.

2019) ("The constitutional protection against deliberate indifference to a pretrial detainee's

serious medical condition springs from the Fourteenth Amendment's Due Process Clause.").

### 4.  Plaintiff's Fourteenth Amendment Claims Must be Dismissed.

The Fourteenth Amendment Due Process Clause analysis for determining whether a

pretrial detainee's conditions of confinement were unconstitutional is identical to that of the

Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). Accordingly, jail

officials must "provide humane conditions of confinement by ensuring inmates receive the basic

necessities of adequate food, clothing, shelter, and medical care and by taking reasonable

measures to guarantee the inmates' safety." *Barney*, 143 F.3d at 1310. However, the

Constitution "does not mandate comfortable prisons [and jails]," and conditions imposed may be "restrictive and even harsh." *Rhodes*, 452 U.S. at 347, 349. Fourteenth Amendment claims, except excessive force claims, *Kingsley v. Hendrickson*, 576 U.S. 389, 389-90, require plaintiffs to fulfill both an objective and subjective prong. First, the deprivation alleged must first be "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Conditions are objectively serious when they threaten the inmate's safety or "lead to deprivations of essential food, medical care, or sanitation." *Rhodes*, 452 U.S. at 348. The circumstances, nature, and duration of the conditions must be considered in determining whether a constitutional deprivation has occurred. *See DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (analyzing the circumstances surrounding exposure to unsafe conditions). While no single factor is determinative, an especially important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration. *Id.* Thus, a "filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)).

Second, the official committing the alleged underlying constitutional violation must have the culpable "state of mind . . . of deliberate indifference to inmate health or safety."[11] *Farmer*,

---

[11] This deliberate indifference standard, which applies to the subjective prong of Fourteenth Amendment claims, is different from the deliberate indifference standard for establishing municipal liability. *See Barney*, 143 F.3d at 1307 n.5 ("Deliberate indifference . . . is defined differently for Eighth [or Fourteenth] Amendment and municipal liability purposes."). "In the prison conditions context, deliberate indifference is a subjective standard requiring actual knowledge of a risk by the official. In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is [either known or] so obvious that the official should have known of it." *Id.*

Further, both standards impliedly require a showing of specified deliberate indifference. Thus, Plaintiff's claim that "[i]n general defendants showed deliberate indifference to the needs of the inmates," Doc. 25 at 24, is a formulaic recitation of the elements that is too generalized to show objective municipal deliberate indifference to a known or obvious outcome. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). This reasoning similarly applies to Plaintiff's formulaic and overly generalized claim that "[i]n general the defendants showed deliberate indifference to the medical needs of the plaintiff." Doc. 25 at 25. Plus, in the Fourteenth Amendment context, this statement is irrelevant because it is the subjective deliberate indifference of individual employees at issue, who are not the defendants in this case.

511 U.S. at 834; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1405-06 (10th Cir. 1996). The

Supreme Court has "defined this 'deliberate indifference' standard as equal to 'recklessness,' in

which 'a person disregards a risk of harm of which he is aware.'" *DeSpain*, 264 F.3d at 971-72

(quoting *Farmer*, 511 U.S. at 835-47). Thus, Plaintiff must show that the official: (1) was aware

of the facts from which the inference could be drawn that a substantial risk of serious harm

exists; (2) drew that inference; and (3) nonetheless disregarded the excessive risk to the inmate's

health or safety by "failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 825,

847; *see also Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

### a. Fourteenth Amendment Deliberate Indifference to Serious Medical Needs Claims

Plaintiff's Complaint includes both generalized allegations of ignored medical requests

and unprofessional care, *see, e.g.*, Doc. 25 at 2, 13-14, 18-19, 21, 24-26, 28-32, and more

specific claims regarding inadequate treatment for: (i) poor vision; (ii) PAD; (iii) SUD,

specifically OUD; and (iv) other psychiatric/mental health concerns. *Id.* at 7, 13-14, 21-22, 24-

26, 28-30. In making these allegations, it is evident that Plaintiff not only raises claims of

inadequate medical treatment, but in doing so, also asserts denial of care claims, which are

analyzed under the same 'deliberate indifference to serious medical needs' test. *Barrie v. Grand

Cnty.*, 119 F.3d 862, 868 (10th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Although summary judgment is generally appropriate where the record demonstrates the

absence of a genuine dispute of material fact, it presupposes the existence of a sufficient factual

record. *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322-23. The Court recognizes, however, that

Defendant BCBC expressly limited its *Martinez* Report and Memorandum in Support for

Summary Judgment to the two issues specified in the Order Directing Answer and *Martinez*

Report. Doc. 42 at 1 (citing Doc. 27 at 1). As a result, there is an insufficient factual basis to

resolve Plaintiff's Fourteenth Amendment claims of deliberate indifference to serious medical needs under a Rule 56 summary judgment standard. However, the Court need not reach the summary judgment stage to dismiss these claims. A district court retains the authority to dismiss a complaint sua sponte under Rule 12(b)(6) where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged and that amendment would be futile. *Hall*, 935 F.2d at 1110 (quoting *McKinney*, 925 F.2d at 365).

Fourteenth Amendment claims alleging denied, inadequate, or delayed medical care involve both an objective and subjective component. *See supra* Section IV.B.4; *Estelle*, 429 U.S. at 104; *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). The objective prong requires Plaintiff to show that the alleged harm was "sufficiently serious," *Farmer*, 511 U.S. at 834, which is fulfilled when it is either (1) "one that has been diagnosed by a physician as mandating treatment;" or (2) "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[12] Doc. 16 at 5 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quotations omitted)); *but see Gallegos v. Bernalillo Cnty. Bd. of Comm'rs*, No. 16-0127, 2018 WL 3210531, at *28-29 (D.N.M. June 29, 2018) (when a plaintiff disagrees with the prescribed care provided, he must allege and demonstrate that the alternative regimen, rather than the underlying medical issue treated, caused harm "so obvious that even a lay person would

---

[12] Plaintiff voices concerns about the future of his mental health. Doc. 25 at 3, 7, 29-30. Liberally construing Plaintiff's Complaint, only Plaintiff's claim regarding psychiatric treatment (not including the treatment of his SUD/OUD) plausibly raises a claim of future harm. *See id.* As some courts have explicitly recognized, the two above-mentioned means of establishing the objective component address both present and future health concerns. *See, e.g.*, *Hammond v. Intervention*, No. 14-CV-00242, 2015 WL 3494393, at *9 (D. Colo. June 2, 2015) (citing *Cassady v. Wilkes*, 519 F. App'x 677, 679 (11th Cir. 2013)). Claims of future harm may be established through either the latter means of establishing the objective prong for medical indifference, or by establishing that conditions of confinement presented an objectively intolerable risk that is "sure or very likely to cause," serious harm that is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 33, 34, 36 (1993) (emphasis in original); *see also Baze v. Rees*, 553 U.S. 35, 49-50 (2008); *Hunt*, 199 F.3d at 1224. Thus, the Court inherently addresses Plaintiff's potential claim for harm to his future mental health in analyzing the objective prong for medical indifference and the constitutionality of his conditions of confinement.

easily recognize" the need for different care).  However, delay-in-care claims have a heightened objective standard.  *See Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276-77 (10th Cir. 2001)).  In addition to the baseline objective standard for inadequate and denial of care claims, Plaintiff must also show that "the delay resulted in substantial harm."  *Id.* at 1262.

For each of these types of claims of deliberate indifference to serious medical needs, the subjective prong requires Plaintiff to establish (either directly or circumstantially) that an official had the sufficiently culpable state of mind, deliberate indifference, as previously defined.  However, a complaint that a medical professional was merely "negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."  *Estelle*, 429 U.S. at 105-06; *see also Farmer*, 511 U.S. at 835 (noting that *Estelle* "establishes that deliberate indifference entails something more than mere negligence.").  "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'"  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106), *cert. denied*, 549 U.S. 856 (2006).

The Court explicitly informed Plaintiff of these legal standards and granted him multiple opportunities to amend.  *See* Doc. 16 at 3-6.  But, as addressed in further detail below, Plaintiff's Complaint only offers generalized and conclusory assertions of inadequate care, devoid of any specific factual predicate that would permit a plausible inference of municipal liability or an underlying constitutionally prohibited deliberate indifference to serious medical needs.  *Contra Iqbal*, 556 U.S. at 678; *Brooks*, 985 F.3d at 1281.  Accordingly, these claims fail on their face and warrant dismissal with prejudice under Rule 12(b)(6).

### i. **Poor Vision**

The Complaint, which only discussed Plaintiff's poor vision three times, alleges that Defendant BCBC failed to provide him eyeglasses or an optometrist appointment for the eighteen months he was detained at MDC, and that he only received glasses upon transfer to state custody.  Doc. 25 at 7, 25-26.  Accepting these sparse statements as true, *see Hall*, 935 F.2d at 1110, Plaintiff evidently attempts to assert a denial-of-medical-care claim.

Despite the Court's liberal construction of pro se pleadings, *see id.* at 1110, 1110 n.3, the Complaint fails to satisfy either the objective or subjective prongs.  In regard to the objective prong, the Complaint contains no allegations that Plaintiff's vision issues were diagnosed as requiring treatment by a medical professional, or were so acute that a layperson would have recognized a need for urgent care.  *Hunt*, 199 F.3d at 1224; *see also Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014).  The subjective prong likewise fails because the Complaint contains no facts alleging any identified official actually drew an inference of a substantial risk of harm and then disregarded it.  *See Farmer*, 511 U.S. at 837.

Even if Plaintiff sufficiently pled a requisite constitutional violation, he has nonetheless failed to plausibly allege municipal liability.  Plaintiff does not allege the existence of any policy, practice, or custom that prevented him from receiving vision care, much less one maintained with deliberate indifference to detainees' serious medical needs, nor does he allege that any policymaker was deliberately indifferent to a known, serious risk.  *See Brown*, 520 U.S. at 397; *Waller*, 932 F.3d at 1283.  Further, it should go without saying, that where Plaintiff cannot show a municipal custom, policy, or practice–both here and elsewhere herein–he also cannot fulfill the causation requirement.  *See Brown*, 520 U.S. at 397; *Barney*, 143 F.3d at 1307.

Accordingly, Plaintiff's Fourteenth Amendment denial of medical care claim, based on the alleged failure to provide vision care, including eyeglasses, must be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

### ii. Peripheral Artery Disease ("PAD")

Plaintiff alleges that after three months at MDC, a rude, unnamed provider diagnosed him with and prescribed him medication for PAD. Doc. 25 at 21, 28. However, it is unclear whether Plaintiff is alleging a claim of inadequate care and/or a delay in care. Regardless, Plaintiff fails to fulfill either the general standard for inadequate care claims or the heightened standard for delay in care claims.

Plaintiff's inadequate care claim fulfills the standard objective component because his PAD was diagnosed by a practitioner as needing treatment. *See id.* However, Plaintiff fails to meet the heightened objective standard because he did not allege any harm stemming from the delay in being diagnosed and receiving medication. Regardless, both claims subjectively fail because Plaintiff failed to identify any individual who recognized and disregarded a substantial risk of serious harm. *See Farmer*, 511 U.S. at 834-47. At most, Plaintiff's complaints of delay and poor follow-up may implicate negligence, which, without more, "does not state a valid claim of medical mistreatment . . . ." *Estelle*, 429 U.S. at 106; *Self*, 439 F.3d at 1232.

Even if Plaintiff had sufficiently pled a constitutional violation on either the basis of inadequacy of or delay in care for his PAD, Plaintiff has nonetheless failed to establish municipal liability by failing to point to any policy, widespread practice, or decision of a final policymaker taken with deliberate indifference. *See Brown*, 520 U.S. at 397; *Waller*, 932 F.3d at 1283.

In conclusion, Plaintiff fails to state a viable Fourteenth Amendment delay in medical care claim in regard to treating his PAD and must therefore be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

### iii.  Substance Use Disorder ("SUD")/Opioid Use Disorder ("OUD")

Plaintiff's SUD, specifically OUD, was initially addressed with a six-day detox upon arrival at MDC and Plaintiff was subsequently denied MAT, despite "proving" he qualified for methadone.  Doc. 25 at 19, 21, 24, 27, 29-30.  Plaintiff makes the conclusory claim that as a result, he relapsed and contracted Hepatitis C.  *Id.* at 24, 29-30.

Despite construing the Complaint liberally, Plaintiff fails to satisfy either the objective or subjective prong of the deliberate indifference test.  Although SUD/OUD may, in certain circumstances, constitute an objectively serious medical need, Plaintiff neither alleges that a qualified provider diagnosed MAT as the necessary form of treatment nor that the risk of harm was obvious to a lay person as requiring immediate medical attention.  *See Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020) (finding deliberate indifference for ignoring the active, serious withdrawal symptoms that led to inmate's death); *Hunt*, 199 F.3d at 1224.  Although Plaintiff may have qualified for methadone treatment, that by no means makes him legally entitled to such treatment.  *See Gallegos*, 2018 WL 3210531, at *28-29 (requiring sufficient allegation and demonstration that the alternative regimen, rather than the underlying medical issue, caused harm "so obvious that even a lay person would easily recognize" the need for different care).

The Complaint is also subjectively deficient because Plaintiff fails to allege any facts suggesting any specific individual knew of and disregarded a substantial risk of serious harm stemming from Plaintiff's SUD/OUD.  *See Farmer*, 511 U.S. at 834-47.  Although Plaintiff

ultimately relapsed and contracted Hepatitis C, the Court cannot "freely substitute [our] judgment" based on hindsight. *Redmond v. Crowther*, 882 F.3d 927, 938 (10th Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) (explaining that courts do not judge the constitutionality of particular actions "with the 20/20 vision of hindsight"). At most, Plaintiff's allegations merely reflect disagreement with a provider's decision over treatment, which does not support a constitutional claim, even when involving pain management or addiction protocols. *See Self*, 439 F.3d at 1232; *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999).

Akin to Plaintiff's other Fourteenth Amendment claims of deliberate indifference to serious medical needs, Plaintiff has again failed to plead sufficient facts to assert municipal liability by failing to allege the existence of a policy, practice, or custom that resulted in the alleged deprivation of care, nor that any such municipal action was implemented with deliberate indifference. *See Brown*, 520 U.S. at 397; *Waller*, 932 F.3d at 1283.

In conclusion, Plaintiff's Fourteenth Amendment claim of deliberate indifference to serious medical needs regarding his SUD/OUD must be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

### iv. Other Psychiatric/Mental Health Concerns

Lastly, Plaintiff alleges that he did not receive proper treatment for his other psychiatric concerns. Doc. 25 at 2, 7, 14, 21, 24, 31-32. Specifically, anxiety, depression, and PTSD. *Id.* at 21. Despite having been seen by the PSU, Plaintiff claims that he was "completely denied mental health treatment." *Compare id.* at 31, *with id.* at 21. Regardless of whether this claim is categorized as a denial-of-care claim or inadequate treatment claim, the Court's analysis remains the same. *See Est. of Beauford*, 35 F.4th at 1262 (citing *Oxendine*, 241 F.3d at 1276-77).

First, Plaintiff fails to fulfill the objective component because he never alleges that he was diagnosed by a physician as mandating treatment. *Hunt*, 199 F.3d at 1224. Inversely, Plaintiff states that he was diagnosed *after* he left MDC. Doc. 25 at 26. Further, although mental health conditions can qualify as serious medical needs, Plaintiff fails to describe any acute symptoms (e.g., suicidality, self-harm, psychosis) that would have made the need for psychiatric care obvious to a layperson. *See, e.g.*, *duBois v. Payne Cnty. Bd. of Comm'rs*, 543 F. App'x 841, 846 (10th Cir. 2013) ("[T]he risk of, or potential for, suicide involves a sufficiently serious medical need and/or harm such that the objective prong . . . is met."). Absent such allegations, Plaintiff has not shown that his mental health condition was "sufficiently serious" within the meaning of the deliberate indifference framework. *See Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996); *Guzman Loera v. True*, No. 21-CV-02794, 2023 WL 2528629, at *12 (D. Colo. Mar. 15, 2023).

This claim also fails subjectively. Plaintiff does not allege that any individual recognized and consciously disregarded a substantial and serious risk to his health resulting from his mental health concerns. *See Bush v. Bowling*, No. 19-CV-00098, 2020 WL 265201, at *4 (N.D. Okla. Jan. 17, 2020). Although he contends that a nurse refused to prescribe psychiatric medication, the refusal to prescribe medication, without further allegations of willful disregard, amounts to a disagreement over treatment and not deliberate indifference. *See Perkins*, 165 F.3d at 811; *Thompson v. Colo. Dep't of Corrs.*, No. 07-cv-00360, 2008 WL 511421, at *6 (D. Colo. Feb. 22, 2008).

Nonetheless, regardless of the merits of the underlying claim, Plaintiff has again failed to otherwise establish municipal liability by failing to identify any policy, practice, or custom that demonstrates deliberate indifference. *See Brown*, 520 U.S. at 397; *Waller*, 932 F.3d at 1283.

29

Accordingly, Plaintiff's Fourteenth Amendment claims of deliberate indifference to his serious medical needs, based on inadequate psychiatric care, must be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

**b.  Fourteenth Amendment Conditions of Confinement Claims**

Much of Plaintiff's Complaint focuses on inadequate living conditions.  *See generally* Doc. 25.  Specifically, Plaintiff alleges excessively long lockdowns confining him to his small cell and unsanitary living conditions.  *Id.* at 19-20, 22-25, 27, 29.

As the Court previously explained, to succeed on a claim of inhumane conditions of confinement, Plaintiff must satisfy both an objective and subjective component.  *Supra* Section IV.B.4.  Applying these standards in further detail below, the Court finds that there is no genuine issue of material fact and that Defendant BCBC is entitled to summary judgment under Fed. R. Civ. P. 56.

Courts repeatedly find that similar and far worse conditions fail to state a claim because of the brief nature of exposure to the alleged conditions.  *See, e.g.*, *Barney*, 143 F.3d at 1311-12 (citing *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993)) (noting eleven day stay in unsanitary cell was constitutional because duration was relatively brief); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" not unconstitutional); *see also Ogbolu v. McLemore*, 107 F.3d 21, 21 (10th Cir. 1997) (unpublished table decision) (cold, wet, drafty, and unsanitary solitary cell for two days does not violate Constitution).

**i.  Excessively Long Confinement in a Small Cell**

Plaintiff alleges that Defendant BCBC subjected him to multiple lockdowns that lasted over seventy-two hours (three days) and as long as 120 hours (five days), as well as multiple days with substantially limited time out of his cell.  Doc. 25 at 7, 13-14, 20 22-23, 29.  Plaintiff

makes similar allegations regarding his six-day stay in the detoxification unit and one-week

placement in the RHU, to which the following analysis likewise applies.  *Id.* at 19, 22, 28.

Plaintiff's claims that the lockdowns deprived him of shared amenities (including

showers), *id.* at 7, 22-23, 25-27, 32, and "took a toll on [his] mental health," *id.* at 29, fail to

fulfill the objective component since Plaintiff does not claim that he was deprived of "the

minimal civilized measure of life's necessities" or that the lockdowns posed a "sufficiently

serious" risk of harm.[13]  *Rhodes*, 542 U.S. at 347.  While extended lockdowns are undoubtedly

uncomfortable, Plaintiff's allegations do not present an "unquestioned and serious deprivation of

basic human needs," nor intolerable or shocking conditions.  *Id.* at 347-48; *see also Hill v. Pugh*,

75 F. App'x 715, 721 (10th Cir. 2003) (unpublished) (applying similar reasoning in holding that

plaintiff being "isolated in his cell twenty-three hours a day for five days a week and twenty-four

hours the remaining two days," was not unconstitutional).  Plaintiff's claim also fails

subjectively because he failed to show that any individual consciously disregarded a serious risk

of harm.  *See Farmer*, 511 U.S. at 834-47.

Although the Court previously found that Plaintiff's Complaint tied the lockdowns to a

systematic policy/practice of Defendant BCBC failing to staff the jail, Doc. 27 at 2 (citing *Myers*

*v. Okl. Cnty. Bd. of Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998)), Plaintiff fails to establish the

objective deliberate indifference requirement for establishing municipal liability.  *See Barney*,

143 F.3d at 1307; *Brown*, 520 U.S. at 397.  Further, these lockdowns can be justified by

legitimate penological interests.  *See Turner*, 482 U.S. at 89; *Washington*, 494 U.S. at 223; *Shaw*,

---

[13] Plaintiff also alleges that, during his week in the detoxification unit, his towel and pair of socks were stolen and that he was denied replacements or an extra blanket.  Doc. 25 at 20.  While these alleged deprivations are not the result of lockdowns, they fail to fulfill the objective component of the deliberate indifference test for the same reasons.  *See Rhodes*, 542 U.S. at 347-48.  In other words, these alleged deprivations present conditions that are uncomfortable at most, not intolerable or shocking.  *See id.*; *see also Bixler v. Shaw*, No. 10-CV-745, 2014 WL 198225, (N.D. Okla. Jan. 14, 2014) (deprivation of clothing items, including socks, and other items, including a blanket, did not constitute "sufficiently serious" harm rising to the level of constitutional violation).

532 U.S. at 225.  Here, the lockdowns at MDC were justified by Defendant BCBC's interest in maintaining the safety and security of the detainees and limited personnel.  *See* Docs. 42 at 1-2, 42-1 at 4 ¶ 15.

### ii.  Unsanitary Housing

Plaintiff's allegations of unsanitary living conditions are threefold, addressed chronologically: (1) Plaintiff's initial week at MDC in the detoxification unit (Doc. 25 at 20, 27); (2) the general unsanitary conditions resulting from the multi-day lockdowns and lack of access to cleaning supplies (Doc. 25 at 25; *see also* Doc. 47 at 2-4); and (3) the four consecutive days when Plaintiff was confined to his cell without a functioning toilet (Doc. 25 at 23, 29; *see also* Doc. 47 at 2, 4).

### (1)  Unsanitary Conditions of Detoxification

Plaintiff alleges that the conditions of confinement during his initial week at MDC, in the detoxification unit, was unconstitutional.  Specifically, Plaintiff points to the unsanitary shared bathroom.  Doc. 25 at 19-20, 27.

Exposure to human waste is one of the few conditions of confinement which automatically evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth and Fourteenth Amendments.  *See, e.g.*, *Fruit v. Norris,* 905 F.2d 1147, 1150-51 (8th Cir. 1990) ("common sense" that "unprotected contact with human waste could cause disease").  Thus, Plaintiff has sufficiently fulfilled the objective prong at this stage.  However, Plaintiff fails to plead any other relevant details beyond the objective conditions of the communal bathroom he shared during his week in the detoxification unit.  *See* Doc. 25 at 19-20, 27.  Thus, this claim fails to fulfill the subjective component because Plaintiff

fails to show that any individual consciously disregarded a serious risk of harm. *See Farmer*, 511 U.S. at 834-47.

Even if Plaintiff had alleged an underlying constitutional violation, Plaintiff has again failed to show the existence of a policy, practice or custom that was undertaken with deliberate indifference and was the "moving force" behind the allegedly unsanitary communal bathroom. *See Brown*, 520 U.S. at 397; *Waller*, 932 F.3d at 1283.

### (2) Generally Unsanitary Living Conditions

Plaintiff alleges that the infrequent trash runs during multi-day lockdowns resulted in generally unsanitary conditions. *See* Doc. 25 at 23; *see also* Doc. 47 at 2-3. The general unsanitary conditions from a lack of trash runs are a byproduct of understaffing, which, as the Court explained, constitutes a systematic practice/policy by Defendant BCBC. Doc. 27 at 2 (citing *Myers*, 151 F.3d at 1316).

However, this claim does not rise to the level of a constitutional violation because of the relatively brief nature of each lockdown. *See Barney*, 143 F.3d at 1311-12 (collecting cases); *White*, 7 F.3d at 121; *Harris*, 839 F.2d at 1235-36; *see also Ogbolu*, 107 F.3d at 21; *Hill*, 75 F. App'x at 721. Further, Plaintiff made no allegation of injury and has therefore failed to plead that the conditions were something more than uncomfortable or to otherwise demonstrate a "sufficiently serious" harm resulting from the generally unsanitary conditions. *See Farmer*, 511 U.S. at 834-47.

### (3) Broken Toilet

Plaintiff alleges that during one multi-day lockdown at an unspecified point in November 2022, he was confined to his cell without a functioning toilet for four days. Doc. 25 at 23, 29.

At the outset, the Court recognizes that there is a conflict as to whether there was any documentation of Plaintiff's broken toilet. On one hand, Plaintiff alleges that he put in a grievance (albeit admitting was not entirely descriptive of his conditions), told every officer who was working, including Lieutenant Speedy, the acting E-Unit Supervisor. Doc. 25 at 23; *see also* Doc. 47 at 2-3, 5-6. On the other hand, Defendant BCBC states that it has no grievance or any other record of a broken toilet in Plaintiff's cell.[14] Doc. 42-1 at 7 ¶ 20, 8 ¶ 26. However, this dispute is not of material fact since it does not affect the outcome of Plaintiff's claim; Plaintiff's claim fails for other reasons. *See Atl. Richfield*, 226 F.3d at 1148; *Adamson*, 514 F.3d at 1145.

While there is "no doubt that toilets can be unavailable for some period of time without violating the [Fourteenth] Amendment," *Johnson v. Lewis,* 217 F.3d 726, 733 (9th Cir. 2000), exposure to human waste carries particular weight in a court's analysis. *McBride v. Deer,* 240 F.3d 1287, 1292 (10th Cir. 2001) (finding "sufficiently serious conditions of confinement" where inmate was confined to a feces-covered cell for three days); *Johnson v. Pelker,* 891 F.2d 136, 139 (7th Cir. 1989) (three days in cell with feces smeared on walls not within "civilized standards, humanity, and decency"); *Fruit,* 905 F.2d at 1151 ("[C]ourts have been especially cautious about condoning conditions that include an inmate's proximity to human waste."); *LaReau v. MacDougall,* 473 F.2d 974, 978 (2nd Cir. 1972) ("Causing a man to live, eat, and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."); *Michaud v. Sheriff of Essex Cnty.*, 390 Mass. 523, 458 N.E.2d 702, 705-06 (1983) (listing cases).

---

[14] Defendants do state, however, that they have records of a broken toilet in a different pod in Plaintiff's housing unit on November 16, 2022, which was fixed that same day. Doc. 42-1 at 8 ¶ 26, 68. If Plaintiff is citing to this instance, the Court notes that the mere smell of urine and feces does not constitute a constitutional violation. *Dickinson v. N.M. Behav. Health Inst.*, 335 F. App'x 729, 733-34 (10th Cir. 2009).

Although the alleged conditions clearly fulfill the objective prong and likely the subjective prong, *see DeSpain*, 264 F.3d at 974-75, Plaintiff failed to show that his toilet being broken for four days arises from a municipal policy or custom (and, as a result, also cannot prove causation). *See Brown*, 520 U.S. at 397; *Barney*, 143 F.3d at 1307. While the lockdowns were an obvious consequence of understaffing, the resulting confinement to a cell with a broken toilet for four days was not. Rather, that specific harm was an indirect and isolated occurrence, for which individual employees had greater responsibility over, not an obvious or inevitable result of the practice of lockdowns and/or understaffing. *See* Doc. 48 at 2 ("[T]he facility was aware of my toilet for all four days . . . because I told every officer that came to check in on us every few hours.").

Likewise, Plaintiff admits that he did not file a grievance until the last day of his toilet being broken and failed to include pertinent details. *See id.* ("I filed a grievance stating that I was locked down in my cell for four days with a broken toilet."). But Plaintiff did not bring suit against those individuals, and cannot establish municipal liability on the sole basis of respondent superior since merely telling individual employees does not inherently equate to putting the overarching entity on notice. *Milligan-Hitt*, 523 F.3d at 1223 (citing *Monell*, 436 U.S. at 690-95); *see also Dodds*, 614 F.3d at 1199. Further, the record directly undermines any claim that Defendant BCBC has a policy or custom of not fixing plumbing that exposes inmates to human excreta. The Activity Supervisor Log shows that a toilet in a different pod of Plaintiff's housing unit broke on November 16, 2022, and was fixed that same day. Doc. 42-1 at 8 ¶ 26, 68.

### c. Fourteenth Amendment Due Process Claim

Plaintiff broadly alleges violations of procedural due process. Doc. 25 at 2, 7. The Court construes Plaintiff's continued contention that many of his seventy-eight grievances went

unanswered or were answered after his release as the basis for his otherwise unspecified due process claim.[15]  *See* Doc. 25 at 4, 14, 18-19, 29; *see also* Doc. 47 at 3, 5.  The right of access to the courts is a constitutionally protected right, as it is part and parcel of exercising the right to petition the government, *see Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985), *cert. denied*, 474 U.S. 1032 (1985), and because inmates may only bring suit after their institution's grievance system, that right encompasses access to the institutional grievance system.  *See Walters v. Corrs. Corp. of Am.*, 119 F. App'x 190, 191 (10th Cir. 2004) ("[T]he prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") (citation omitted).  However, Plaintiff's claim nonetheless fails because there is no constitutional right to effective grievance procedures.  *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013); *Sawyer v. Green*, 316 F. App'x 715, 717 (10th Cir. 2008) (jail and sheriff's office authorities' lack of response to inmate's grievances did not violate the constitution because procedurally, nothing more is required than the plaintiff's ability to raise his constitutional claims in the courts).

    In other words, "[a] viable due process claim cannot rest on allegations of an unfair or inadequate grievance process."  *Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017) (collecting cases).  In fact, even when an administrative grievance involves a potential constitutional issue, like conditions of confinement, the failure to effectively respond does not

---

[15] To the extent that Plaintiff may be arguing that the lockdowns were a violation of due process, courts regularly reject claims that lockdown conditions and limited access to amenities violate the Due Process Clause.  *See, e.g.*, *Simmermaker v. Trump*, No. 20-cv-01671, 2021 WL 915985, at *4 (D. Colo. Mar. 10, 2021) (allegations of prohibition on iPads, video visits, televisions, and instruments do not implicate due process); *Matthews v. Wiley*, 744 F. Supp. 2d 1159, 1172 (D. Colo. 2010) (general allegations of restricted liberty, amenities, recreation, visitation, and privileges do not implicate due process violation); *Lekas v. Briley*, 405 F.3d 602, 610-13 (7th Cir. 2005) (conditions including inability to participate in prison programs, loss of telephone usage, inability to receive family visits, inability to attend church or meet with clergy, and drastic reduction in the number and nature of personal items did not impose an atypical and significant hardship); *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1995) (inmate's confinement in disciplinary segregation with frequent lockdowns, restricted access to the law library, denial of educational opportunities, and loss of social and rehabilitative activities did not impose an atypical or significant hardship).

violate the inmate's First Amendment rights because the right to petition pertains to the right of

access to the *courts*, "which is not compromised by the prison's refusal to entertain his

grievance." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished).

Therefore, Plaintiff's claim that his grievances were inadequately handled is insufficient

to establish a due process claim, and must therefore be dismissed with prejudice under Rule 56.

### 5.  Plaintiff's First Amendment Retaliation Claim Must be Dismissed.[16]

Plaintiff alleges that because he filed a grievance against Officer Shane Flynn around the

first week of December 2021, he was retaliatorily placed in the RHU for the week of December

7, 2021, through December 14, 2021.  Doc. 25 at 22, 28.

To establish a legally sufficient retaliation claim, Plaintiff must show: (1) he was engaged

in a constitutionally protected activity; (2) the defendant's retaliatory conduct caused Plaintiff "to

suffer an injury that would chill a person of ordinary firmness from continuing to engage in that

activity;" and (3) specific facts "that the defendant's adverse action was substantially motivated

as a response to the plaintiff's exercise of [the] constitutionally protected conduct."  *Shero v. City

of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citations omitted); *Peterson v. Shanks*, 149 F.3d

1140, 1144 (10th Cir. 1998) (requiring "*specific facts* showing retaliation because of the exercise

of the prisoner's constitutional rights.") (emphasis in original).

Here, Plaintiff was engaged in a constitutionally protected activity.  *See Gee v. Pacheco*,

627 F.3d 1178, 1189 (10th Cir. 2010).  As established, Plaintiff has the constitutional right to file

grievances–even if handled ineffectively.  *Supra* Section IV.B.4.c.  Because Plaintiff alleges that

---

[16] Plaintiff also alleges a lack of opportunity to exercise his religion as an unconstitutional deprivation resulting from MDC's lockdowns.  While religious exercise is protected by the First Amendment, the Court already established that the lockdowns were constitutional because they were justified by legitimate penological interests.  *See Termunde v. Cook*, 684 F. Supp. 255, 261 (D. Utah 1988) ("Whereas freedom to hold religious beliefs is absolute, freedom to practice religion in prison can be limited by security considerations.") (citation omitted).

he was retaliated against for protected speech, the next analysis, determining the chilling nature of the alleged retaliation, is objective, rather than subjective. *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004) (citing *Smith v. Plati*, 258 F.3d 1167, 1176-77 (10th Cir. 2001)). However, the Court need not analyze whether the adverse action was objectively chilling because Plaintiff failed to show that the adverse action was motivated by his exercise of protected speech.

Plaintiff's conclusory allegation that his short-term and one-time placement in the RHU was decisively the result of retaliation is insufficient to state a claim. *See Hall*, 935 F.2d at 1110 ("[T]he court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."); *Friedman v. Kennard*, 248 F. App'x 918, 922 (10th Cir. 2007) ("Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim."); *Ortiz v. Torgensen*, No. 17-CV-328, 2019 WL 1376837, at *9-10 (D. Utah Mar. 27, 2019) (noting that retaliation may play a role in the adverse action and only rises to the level of constitutional violation where Plaintiff shows a strictly "but for" retaliatory motive). Although Plaintiff's placement in the RHU was temporally proximate to his grievances against Officer Flynn, Plaintiff exercising his constitutionally protected rights does not shield him from the regular occurrences experienced in jail. *Peterson*, 149 F.3d at 1144. As clarified in Deputy Warden Otero's affidavit, Plaintiff was placed in the RHU pending an investigation into Class I charges associated with alleged possession of gang paraphernalia. Doc. 42-1 at 2 ¶ 4. In such instances, MDC policy calls for inmates to be placed in the RHU. *Id.* at 77-78.

Even if Plaintiff had established a genuine factual question that an individual employee violated his constitutional rights (i.e., retaliated), Plaintiff fails to demonstrate that there exists a

genuine factual question that a municipal policy, practice, or custom exists, which was undertaken with deliberate indifference and was the moving force behind the alleged injury.  *See Barney*, 143 F.3d at 1307; *Brown*, 520 U.S. at 397.

In conclusion, Plaintiff's retaliation claim fails, and Defendant BCBC is entitled to summary judgment in their favor under Fed. R. Civ. P. 56.

## V.  <u>RECOMMENDATION</u>

For all the foregoing reasons, the Court finds that Plaintiff's claims fail to state a claim for relief, are facially invalid as a matter of law, or are factually insufficient.  Based on these findings, the Court recommends that:

1. Defendant BCBC's *Motion for Summary Judgment on the Martinez Report* (Doc. 43) be **GRANTED**; and

2. Defendant City of Albuquerque's *Motion for Summary Judgment* (Doc. 46) be **GRANTED**; and

3. Plaintiff's Complaint (Doc. 25) be **DISMISSED** with prejudice under Federal Rules of Civil Procedure 12(b)(6) and 56(a).

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**